IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14-4062-CR-C-BCW |
| ) | |
| DONALD SHAW, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant Donald Shaw filed a motion for suppression of evidence on November 13, 2014.[1] (Doc. 18). Defendant primarily contends that there was no legal authority for the warrantless search of the defendant's car after the defendant was stopped on August 20, 2014. Defendant specifically argues that certain evidence should be suppressed pursuant to the Bailey rule. (Doc. 18 at 4-5). The Government has filed suggestions in opposition, under seal, to the defendant's motion to suppress. (Doc. 26). A hearing was held regarding the motion on January 13, 2015, following which both parties filed supplemental suggestions with leave from the Court.[2] (Docs. 30 & 41).

### I. Background

On October 2, 2014, the Grand Jury returned a single count indictment charging defendant Shaw with Possession With Intent to Distribute Heroin. Specifically, the Indictment alleges that "on or about August 21, 2014, in Boone County . . . [defendant Shaw] did knowingly and intentionally possess with the intent to distribute a controlled substance, that is, a mixture or substance containing a detectable amount of heroin . . . in violation of Title 21, United States Code, Section 841(a)(1). (Doc. 1).

---

[1] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

[2] The Court permitted parties to file supplemental authority within 7 days of the date of the hearing on January 13, 2015. (See Minute Entry, Doc. 29). Upon motion by the defendant, and no objection being raised by the Government, the Court granted the defendant three extension requests to submit his supplemental suggestions. Defendant's supplemental suggestions were filed on May 4, 2015.

The alleged unlawful search here stems from the execution of a search warrant for 120 Clinton Drive, Columbia Missouri. The search warrant was supported by a sworn affidavit by the Columbia Police Department's (CPD) Detective Dallas Dollens. (Doc. 26-1 at 3). In his affidavit, Detective Dollens states that beginning on January 13, 1996, and continuing through to January 2013, CPD received information from multiple sources that John Rombach was selling illegal narcotics in Columbia, Missouri. In June 2014, Detective Dollens reports that he received information that a "John" living at 120 Clinton Drive was selling heroin and that the residence was also being used by another heroin dealer to package drugs for distribution. Detective Dollens states that CPD was dispatched to 120 Clinton Drive in response to a call about a possible heroin overdose on June 4, 2014. On August 16, 2014, Detective Dollen states that an individual arrested for possession of heroin and drug paraphernalia informed investigators at CPD that he purchased the heroin from a man named John and provided a description of 120 Clinton Drive. Detective Dollens testified at the hearing that this individual had overdosed on heroin in his car. The affidavit also states that John Rombach has a prior felony drug conviction, that CPD records show John Rombach living at 120 Clinton, and that utilities at that address are in the name of Lucia Rombach.

Further, Detective Dollens testified that the unnamed drug dealer in his affidavit was the defendant, and that he had received information from a cooperating citizen that the defendant was a large dealer who purchased heroin in St. Louis and packaged it for resale at 120 Clinton Drive.

On August 20, 2014, the day the search warrant was executed at 120 Clinton Drive, CPD began surveillance of the residence at approximately 4:00 p.m. At the same time, a search warrant was being obtained, which was then issued at 4:35 p.m. At approximately 5:45 p.m., CPD officers were reviewing the search warrant and the surveillance officers reported that they believed there was an unknown male inside the residence. The officers decided to wait 45 minutes before serving the search warrant to see if the unknown occupant would leave the residence.

During this interim period, at approximately 6:30 p.m., Detective Dollens observed a white SUV pull into the driveway at 120 Clinton Drive. Detective Dollens identified the driver as the defendant. Detective Dollens observed the defendant exit the SUV, go into the residence and then exit again after being inside for about 2 minutes. Detective Dollens then observed the

2

Case 2:14-cr-04062-BCW   Document 42   Filed 05/28/15   Page 2 of 9

defendant open the trunk of his SUV, reach inside the trunk for several minutes, before getting back into his car and driving away.

Detective Dollens testified that by the time he observed defendant Shaw pulling up to 120 Clinton Drive on August 20, 2014, he had been investigating the defendant for about one year for distribution of heroin. As stated in a second sworn affidavit he signed later that day, Detective Dollens had received prior information from numerous cooperating citizens that the defendant was selling heroin in Columbia, Missouri, and that he packaged heroin at 120 Clinton Drive. Detective Dollens states that a heroin overdose victim identified the defendant to be the person he purchased heroin from in December 2013. Detective Dollens states that on April 4, 2014, CPD, having received information that the defendant and Samantha Greene were staying at America's Best Value Inn and using heroin and that defendant was selling heroin out of the hotel room, located both the defendant and Greene in the hotel room identified and found the defendant to be in possession of $3,000 in cash. On April 17, 2014, Detective Dollens states that he made a controlled purchase of heroin from the defendant. In June 2014, Detective Dollens further states that he received information that the defendant was purchasing heroin in St. Louis and selling it in Columbia. Based upon this information in addition to his knowledge that the defendant did not have a valid driver's license, Detective Dollens asked another officer to stop the defendant's vehicle. The defendant was stopped after he had driven between .5 and .7 miles away from 120 Clinton Drive.

Upon conducting the stop of the defendant's vehicle, both the defendant and a female passenger were detained. A CPD officer searched the defendant's person and found over $2,000 cash, an Extended Stay America hotel card, and three cell phones. The defendant's SUV was seized, impounded, and later searched. A search of the vehicle revealed a box of baggies, a razor blade, and a small mobile TV. Residue found on the razor blade and small mobile TV tested positive for heroin. Based upon the evidence found on defendant's person and in his vehicle, officers contacted the Extended Stay America Hotel and learned that there was a room reserved in the defendant's name.

At approximately 7:03 p.m., law enforcement officers from CPD executed the search warrant on 120 Clinton Drive. During the search of the residence, officers seized five small baggies of heroin near the front door, numerous baggies and two syringes from the kitchen, and a digital scale in the bedroom. At the evidentiary hearing, Detective Dollens testified that the

amount of heroin in each baggie was about one 'street unit', which he stated is about one-tenth of a gram. Based on the information CPD had about the defendant's suspected involvement with heroin distribution from the prior year; the items seized from the defendant, his car, and 120 Clinton Drive; learning from an employee at the Extended Stay America hotel that a room was checked out in defendant's name; and statements reported to be made by defendant to officers that he had been using heroin since the age of fourteen, officers obtained a search warrant for the hotel room on August 20, 2014, at 11:50 p.m. The search warrant for the hotel room was supported by a sworn affidavit by Detective Dollens.

Upon execution of the Extended Stay America Hotel search warrant, the following items were seized: two syringes from the bathroom, numerous baggies with the corners cut off in the trash can, a box of baggies inside the night stand, and a 30 gram baggie (or approximately 300 'street units') of heroin inside a size 12 Nike tennis shoebox. During a subsequent interview of defendant, he confessed to distributing heroin.

Defendant argues that detention and search of his person and his car cannot be lawfully supported by the search of 120 Clinton Drive when he was removed "both geographically and temporally from proximity to the search". (Doc. 18 at 4). Defendant argues that "[t]he illegal detention and search of his car yielded the evidence used by the police to justify a search of his hotel room later that day, and the evidence used to secure a confession that evening", and therefore requests that such evidence be suppressed. Id. The Government disagrees and asserts that CPD officers made a valid stop of the defendant's car in accordance with Terry v. Ohio, 391 U.S. 1 (1968), or alternatively, that the warrantless search of the defendant's car is valid under Arizona v. Gant, 556 U.S. 332 (2009).

## II. Legal Analysis

Defendant contends that the search and seizure of his person and his vehicle was illegal in light of the United States Supreme Court decision in Bailey v. United States, 133 S. Ct. 1031 (2013). In Bailey, the Court considered the issue of whether the categorical authority to detain someone incident to the execution of a search warrant pursuant to their decision in Michigan v. Summers, 452 U.S. 692 (1981), extends beyond the immediate vicinity of the premises being searched. Id. Summers sets forth an exception to the requirement for probable cause to arrest for a crime in that "the character of the additional intrusion caused by detention is slight and because the justifications [—namely, interests of officer safety, facilitating the completion of the

4

search, and prevention of flight—] for detention are substantial." Id. at 1038 (quoting Muehler v. Mena, 544 U.S. 93, 98 (2005) (applying the rule stated in Summers). This exception "extends farther than earlier exceptions because it does not require law enforcement to have particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers." Id. (citing Muehler v. Mena, 544 U.S. 93 (2005)).

In Bailey, officers set up surveillance at a residence where they had obtained a search warrant. Id. at 1036. The officers observed two men, later identified as Bailey and another, leave the residence, get into a vehicle, and drive away. Id. Officers stopped the vehicle about a mile away from the residence, and the men were searched and detained. Concurrent with Bailey's detention, other officers executed the search warrant at the residence and found drugs and a gun. Id. Bailey asserted that his detention incident to the execution of the search warrant was an unreasonable seizure in violation of his Fourth Amendment rights and that the evidence yielded from it should therefore be suppressed. Id. The Supreme Court ultimately concluded that an extension of authority beyond the immediate vicinity of the premises covered by a search warrant was not supported by the rationale justifying the situations established earlier under Summers where detention without probable cause to make an arrest is permissible due to law enforcement interests. Id. at 1041-42 (citing Summers, 452 U.S. at 702-703).

Defendant's position here is that the search and seizure of his car and his person were unreasonable and that therefore the evidence and later confession obtained as a result should be excluded from defendant's trial. In response, the Government argues that the validity of the police conduct is governed by standards other than the rule in Bailey, which dealt with searches and seizures incident to a search warrant. Specifically, the Government disagrees with the defendant's characterization of the vehicle stop as being incident to the search warrant and instead argues that it was a valid investigatory stop, requiring only that officers have "reasonable suspicion that the vehicle or its occupants are involved in criminal activity." United States v. Chantharath, 705 F.3d 295, 302 (8th Cir. 2013) (quoting United States v. Mora-Higuera, 269 F.3d 905, 909 (8th Cir. 2001)). The government further asserts that the search and seizure is justified under the rationale in Terry v. Ohio, 392 U.S. 1 (1968).

The Court agrees with the defendant that the search and seizure in this case was beyond the immediate vicinity of 120 Clinton Drive under the principles discussed in Bailey. However, "[i]f officers elect to defer the detention until the suspect or departing occupant leaves the

5

immediate vicinity, the lawfulness of detention is controlled by other standards, including, of course, a brief stop for questioning based on reasonable suspicion under Terry or an arrest based on probable cause." Bailey, 133 S. Ct. at 1042. Here, the warrantless intrusion was more than a brief investigatory stop as posited by the government, even if it can be argued that the encounter began as a mere investigatory stop. The Court does not need to tease out any change in the character of the stop because the Court concludes the officers had probable cause to believe that the vehicle contained evidence of criminal activity at the time it was stopped.

In its supplemental suggestions, the Government argues that the search of defendant's car was made incident to his arrest in accordance with the rule set forth in Arizona v. Gant, 556 U.S. 332 (2009). (Doc. 30 at 1). Specifically, that "[b]ased upon all the information available to the officers at the time the Defendant's vehicle was pulled over, officers had a reasonable suspicion to stop the Defendant's SUV, arrest the Defendant, and search his vehicle." (Doc. 30 at 2). Defendant in response maintains that not only is there no evidence that he was arrested for failure to produce a valid license, but even if that were true, then police could not reasonably have expected to find evidence relevant to that offense to justify searching his car. (Doc. 41 a 2).

The Supreme Court in Arizona v. Gant confined when a warrantless vehicle search is valid as incident to a recent occupant's lawful arrest to two situations. 556 U.S. at 352. "Police may search a vehicle incident to a recent occupant's arrest only if [(1)] the arrestee is within reaching distance of the passenger compartment at the time of the search or [(2)] it is reasonable to believe the vehicle contains evidence of the offense of arrest." Id. at 351. In Gant, officers stopped the defendant's car because he had an outstanding warrant for driving with a suspended license. Id. at 336-37. The Supreme Court affirmed the suppression of the warrantless search of the car that followed because all passengers were secured before the search and there was no possibility of finding evidence of driving with a suspended license in the car. Id. at 343. Under Gant, while an arrest for a drug offense provides a reasonable basis to believe the arrestee's vehicle contains relevant evidence, an arrest for a traffic violation does not. See Id. at 343-44 (court reasoned that in contrast with cases involving arrests for drug offenses, no evidence of the offense of driving with a suspended license could possibly be obtained by the vehicle search).

At the hearing, Detective Dollens testified that the defendant was arrested based on not having a valid driver's license. However, the Government argues that the officers here lawfully stopped the defendant's vehicle for the purpose of arresting him based on the information CPD

6

officers had at that time regarding the defendant's suspected involvement with heroin distribution in addition to the knowledge that he had a suspended license. Because the Court finds that the warrantless search of his car was reasonable under the automobile exception, further analysis pursuant to the standard set forth in Gant is unnecessary.

Upon a review of the totality of the circumstances, this Court finds that there was probable cause to believe the defendant's car contained contraband or evidence of criminal activity at the time it was stopped. Under the automobile exception to the Fourth Amendment, officers are not required to obtain a warrant to search a vehicle when they have probable cause to believe it contains contraband or evidence of criminal activity. See United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004); see e.g., United States v. Brown, 634 F.3d 435, 438 (8th Cir. 2011) (warrantless vehicle search valid because police had probable cause after defendant admitted he had been smoking and police smelled odor of marijuana coming from car). "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Donnelly, 475 F.3d 946, 954 (8th Cir. 2007) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Here, Detective Dollens identified the defendant as the driver of the SUV that pulled into the driveway at 120 Clinton Drive where CPD officers were preparing to execute a search warrant due to suspected heroin trafficking. Detective Dollens observed the defendant briefly enter the house at 120 Clinton Drive, return to his vehicle and reach into his trunk before driving away. Detective Dollens also knew that the defendant did not have a valid driver's license. Officers had received prior information from numerous cooperating citizens that the defendant was selling heroin in Columbia, Missouri, and that he packaged heroin at 120 Clinton Drive. CPD had a search warrant for the residence at 120 Clinton Drive as a premises involved in the use and distribution of heroin. A heroin overdose victim identified the defendant to be the person he purchased heroin from in December 2013. On April 4, 2014, CPD, having received information that the defendant and Samantha Greene were staying at America's Best Value Inn and using heroin and that defendant was selling heroin out of the hotel room, located both the defendant and Greene in the hotel room identified and found the defendant to be in possession of $3,000 in cash. On April 17, 2014, CPD conducted a controlled purchase of heroin from the defendant. In June 2014, Detective Dollens received information that the defendant was purchasing heroin in St. Louis and selling it in Columbia. Although the information about the

7

defendant's drug activities occurred approximately two months earlier, the search of defendant's person after observing him leave 120 Clinton Drive that yielded over $2,000 cash, an Extended Stay America hotel card, and three cell phones, supported the information received by CPD officers regarding defendant's earlier drug distribution activities. The totality of these circumstances established probable cause to conclude that narcotics or evidence of the defendant's heroin distribution activities would be found in the vehicle.

Consequently, based on the information of police officers at the time of the stop—including the information from Detective Dollen's roughly year-long investigation of the defendant as a suspected large heroin dealer, and the observations of the officers upon arriving at 120 Clinton Drive where officers had information from numerous sources that the defendant was packaging heroin for distribution—not only was there was probable cause of criminal activity in the vehicle to support a search of it, but the same facts support the Court's conclusion that there was also probable cause to arrest the defendant for heroin trafficking and driving with a suspended license. It is well settled that a search of the arrestee's person incident to a lawful arrest is a traditional exception to the warrant requirement. United States v. Robertson, 414 U.S. 218, 224 (1973). Defendant does not offer any authority to suggest that the search of his person as incident to his arrest was unreasonable. The Court is not persuaded that the search of the defendant as incident to his arrest was unlawful.

### III. Conclusion

For the reasons set forth above, the evidence yielded was not in violation of the defendant's constitutional rights under the Fourth Amendment and therefore defendants' contentions that the search and seizure at issue were unreasonable should be denied. Police officers acted lawfully in searching the defendant as incident to his arrest. Police also officers conducted a valid vehicle search under the automobile exception to the warrant requirement in that there was probable cause to believe the car contained evidence of heroin distribution.

IT IS THEREFORE RECOMMENDED that the motion of defendant Donald Shaw for suppression of evidence (doc.18) be DENIED.

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report

and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 28th day of May, 2015, at Jefferson City, Missouri.


/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge